You may proceed, Mr. Schwartz. Good morning, Your Honors. I'm Bob Schwartz, Corporal Specialist for the trial firm on behalf of Maurice Mitchell. The unreported evidence in this case is that the Schwartz means and the means for causing elements of Claim 1 are exposed in the specification to one of ordinary skill in the art. Where's the structure? Where's the structure? Yes. The structure is taught to one of ordinary skill in the art. The specification must be read as if one of ordinary skill in the art is sitting down and reading the specification. The structure, as it relates to the switch means, requires us to look at the very top and bottom of column 19. Even assuming, just hypothetically, that one of skill in the art could supply a switch, is that going to satisfy the statutory requirement that there must be structure in the specification that is linked to the function in the claim? Thank you for asking that, Your Honor. Specifically, on point, I direct you to the column 19 at the bottom of the column, where it specifically reads that the switch means are representing a plurality of logical elements, structure, each of which can be logically connected. Yeah, but I'm sure we've all read that many times. That's not structure. That's kind of describing, in very general, somewhat meaningless terms, the claimed element. But where's the structure? What switch does it require? Well, Your Honor, earlier on in that same column, the switch means are referred to as switching mechanisms, are referred to as switches. These are common electrical terms. There is detailed evidence in the record that one of ordinary skill in the art would interpret this to be a tristate switch. Dr. Patterson, who is the Associate Dean of the University of Texas College of Engineering, What in the record says they're going to find this to be a tristate switch? What part of the record? Yeah, where in the record do we find that? Well, we'll find that in the uncontroverted affidavit of Dr. Patterson, A2159-65, his supplemental affidavit A2490-94, and along with Dr. Swift's affidavit A2111-2126. But doesn't Dr. Patterson also say, in a somewhat admitting way, that the structure is not there if you don't find it in the logical element statement of the specification? No, sir, I think he goes beyond that. I think you have to look also to column 24 and also to figures 1 and figures 19, which show a great deal of detail as to the switch means and how the switch means are interacted with other elements. For example, on figure 19, if you look at element 106 and its relationship to the decode switch 530... Figure 19A? Yes, figures 19A and 19B are to be read together, and I believe if you look at the bottom of the page, you'll see where the control line 106 comes into the decode 530, and then the decode 530 goes to the various tristate switches 502, 504, and 506, which relate to the logical connection to... There's no structure there. There is a decode switch at 508, etc., at 530, 502, but there's no... What is that switch? Well, it's the appellant's position that that is clear to one of ordinary skill in the art who would sit down and read the specification that it is a tristate switch that accomplishes the specific logical functions that are detailed with specificity within the claim itself, and that that particular figure in and of itself provides that type of detail that one of ordinary skill in the art would be able to know that a tristate switch is the type of switch that is contemplated to perform the logical functions that are set out in the specification and in the claim. Could one of ordinary skill in the art draw any other conclusion from that? In our opinion, Your Honor, no, that it is clear that tristate switches are well known in the art as of the time of this application. Even Intel's own expert details the tristate switches that are found in the prior art. For example, the Hillis reference at 824, 59, 60, and the Camp reference at 824, 43, and the Moore reference at 824, 29, all of these reference the widespread use of tristate switches in this art as of this time. And all of this presupposes that those are actually 112-6 elements, right? Because something that says first switch means if we were to decide that the word switch to one of ordinary skill in the art was structure, then we wouldn't have to do what you're doing now, which is resort to the specification and extrapolate from these photos whether or not this is structure. Precisely. And, Your Honor, directing your attention to the plain language of first switch means, which is comprised of at least three distinct parts, and talks about for connecting those parts and circuits of the path configuring means to three sets of contacts. That's true. Why did you use the word means? If you just meant switch, why didn't you just say switch? You know that when you use that word means, you're setting off a chain reaction in patent law. I couldn't agree more with you, Your Honor, but as you held in the Cole case, I think in this particular case we have a situation where the attorney may have been somewhat enamored with the word means and used it when it was inappropriate because it's clear in the specification that switch means is used as a switch, as a switching mechanism. Yeah, but the Cole case was dealing with diapers and stitching. There's kind of only one way to stitch a diaper, and so it's a little different with switching, isn't it? You can switch things in lots of different ways in a computer, lots of different structures. As Dr. Patterson testified in his declaration, that yes, if you look at only logical elements by themselves, yes, there may be a variety of logical elements, but if you constrain those logical elements within the context of the specification to do the particular functions that are required, then only the tri-state switch is an available switch that is available to you. As this Court has held in several other switch means kinds of cases, for example, the general, well, not necessarily this one. How about overhead door? In that case, that's a good example of a case where the switch means didn't mean just a switch because it was a very complex switch that was used in the context of a much more complicated array than would ordinarily be presumed by one of the ordinary scales of the art, and therefore that was insufficient in and of itself. There again, looking to cases such as the S3 case where the SEL labeled black box was sufficient structure and it was not indefinite, these types of cases, even Intel has had the benefit of this type of analysis that we seek in the Intel and Broadcom case where it was determined that statistical decoding means in the claim shown only by a black box. It was not indefinite. Indeed, our situation, we feel, is much, much more fully developed and much more robust in the sense that there are columns of text and to the extent that Intel seeks to have a parts catalog identified in a specification, not in the face of a specification that was 150 pages long as it was this file. We'd be dealing with a thousand page specification if every part and every function had to be described and as some of the cases talk about reinventing the wheel, it seems to be inappropriate. When you finish up your talk right now about switch, would you move for means for causing, move on to that limitation? I'm just worried you're going to run out of time without addressing it. Sure. Can you move on to that? Because I had a little trouble in the specification finding the structure for that one. Okay, well the means for causing, as Dr. Patterson testified in his declaration, is simply the control elements for the tri-state switches. That's that line 106 that goes to the decoder box. It is the triggering mechanism for the tri-state switch. But our precedent says that you have to link, clearly link, the structure and the specification to this function and I'm having trouble finding a linking because your means for causing has what, three functions if I'm remembering right? And I'm having trouble finding the linkage between the structure and the spec that says that structure clearly performs these three functions. Your Honor, I believe that a careful reading of columns 24 and 25 of the specification clearly links the functionality and the requirements of the means for causing with the switch means that is detailed very carefully at the bottom of column 19 and up at the top of column 20. And that's where that linking occurs in combination. Show us the language in 24 that you think supplies that link. Well, one must read the entire specification as a whole, Your Honor. I mean, it's not just a particular pinpoint and if one will look carefully at the reply brief, one skilled in the art would clearly know that the triggering function or the control element functions of a tri-state switch are those that… You don't even disclose a tri-state switch anywhere in columns 24 and 25. Pardon me? You don't even disclose a tri-state switch. Those words don't appear here. So where in your spec do you clearly link a structure to these functions? One skilled in the art would know that the tri-state switch is the switch that is being referenced. And that is clearly what has been testified to by Dr. Patterson to which there is no controverting testimony by Intel. Okay, so you're saying the switch means tri-state switch and that's how one of skilled in the art would understand it. So where does it show that the switch discussed either in columns 24, 25, or anywhere else performs these three functions for the means for causing that are clearly identified? Well, for example, it's that particular text. It's also the… Which text? I'm just missing it. The text in 24 and 25, the bottom of 24 and about three-quarters down through 25, along with the figures, figures 1 and figure 19. Again, the entire… The claim is to be interpreted in light of the entire specification of the patent. And to one of ordinary skilled in the art, one having this high level of training and experience would be able to then comprehend what is intended. I'd like to reserve a little bit of time for my… You're welcome to Mr. Schwartz.  Thank you, Your Honor. Please, the court. Good morning. My name is Bob Van Nest. I'm here on behalf of the Appellate Intel Corporation. I think this appeal can be resolved on a single issue and the court was addressing it… If we set the level of skill in the art high enough, why wouldn't they figure it out from this spec? Well, I think the court's precedent is pretty clear, Your Honor, that there has to be some disclosure of structure in the specification. And here, we not only had an absence of it, we also had admissions, both on the means for causing and the switch means, that there was no structure. And that they were, in fact, relying on the function from which to somehow discern it. If I hear Mr. Schwartz correctly, he says if we define that function specifically enough, it really limits the structure to only one, the tri-state switch. And he says we've got enough functional description in here that anyone of skill in the art would know that we're referring to only one kind of structure. Why isn't that correct? If you give enough description of function, it'll point you to the only structure that'll work. I don't think that's enough, Your Honor, because that leaves in the hands of an expert, essentially. What's the scope of the claim going to be? I mean, the whole point of the default proof case in Atmel and the Bio Medino case decided in June was you have to have some grounding in the specification. If you're going to use the broad claim language of 112.6 and claim via means, then you have an obligation to set forth some structure in the specification. Now, here, let's take the means for causing. That was admittedly a means plus function limitation already stipulated to that law. Judge Davis located only one passage, 24 and 25, that could possibly even be a candidate for disclosed instruction. As to that, the inventor admitted he wasn't aware of any disclosure of the means for causing, but that there would be many ways to do it. The patent left it to the designer to come up with a way that best suited him. Dr. Patterson said the same thing. Dr. Patterson said it's functional. This language in 24 and 25 is functional. And he doesn't say, looking at this language, I know it's a tristate. What he says is it could be a tristate. It might be a tristate. A tristate would be an example. But he also says that when you come to find, if you were to determine how many different structures could be used to build this, he says, I don't know. It's a big number. There are all kinds of things that could do it. Now, in the oral argument on the motion for summary judgment, counsel conceded in response to a direct request from the trial judge as to whether or not this passage provided structure and whether they were relying on it. He said no. We are not relying on columns 24 and 25. We are no longer relying on them. And it's quite clear here in the briefing before this court, they're relying solely on the knowledge of unskilled in the art. I think that question was resolved most recently in Bio Medina in June. Mr. Van Ness, just speaking in policy terms for a moment, I remember the late 80s and the discussion that means plus function was kind of the way to claim broadly these intricate electrical connections and so forth, and that you could circumvent some of the specificity you would need in the specification. Of course, we learned later with cases in the 90s that you did need some specific structure. To what extent do we kind of account for the evolving nature of the law here, which has changed some of the ways which we claim and represent our inventions? Your Honor, I don't think this case comes close to one near any line that the court has drawn. In Bio Medina, the court said the bar is low, but you have to disclose some structure. If you don't do that, then we have an untethered claim. We're leaving it to, quote, unskilled in the art, any expert so qualified to pick and choose. And that would be particularly inappropriate here where, for example, on the switch means claim, Judge Davis found that there's no disclosure of tristate circuitry. But isn't switch just a pretty simple electrical device? Not in this case. The switch means here perform a variety of functions. I mean, they have to determine when to put the device in certain conditions based on various other conditions of the overall chip. So it's fairly complicated. It's nothing like the leapfrog case or the cold case or any of those. It's more like overhead door, as Your Honor pointed out, much more like overhead door where you're talking about circuitry in a complicated silicon device. And that circuitry performs a great number of functions. And here there was no disclosure of any structure. I want to turn for just a minute to the switch means because I think it's important to recognize the sort of unequivocal nature of the record below. First of all, when we asked the inventor who drafted the specification what the structure was, he said there isn't one. It leaves that up to the designer. And we asked, well, how many ways could a designer do this? There are as many ways to build the switch means as there are design teams. We asked Dr. Patterson the same question. And he said, as you've noted, if general logical condition isn't enough, then there is no structure. And we asked, how many ways could you build the so-called switch means? He said, there are many examples. I'm not sure how many. But it's got to be a big number. Now, based on these admissions trial court reviews. Why isn't it any different than saying the fastening means, for example? Fastening means could broadly be construed as nails, screws. I mean, there's a million permutations, glue, adhesive, tape, so many things. But fastening could be determined to be structure despite the word means. And so why can't switch means, if switch is commonly known to those skilled in the art as any number of many different structures, why can't that be enough? Well, there's, I think, three reasons, Your Honor. One is that even appellants can see at page 47 of their brief that switches covers an enormous number of different devices. I mean, that's right in their opening brief. What Judge Davis did was he looked to see, are they using means in every claim limitation? No, they're not. They're using them selectively. So they've obviously chosen to use means with switch. He then looked at the, not only the specification, but the prosecution history, and determined, well, they're using switch most often to mean a function, not a structure. As this court's recognized, the term switch can be functional. It can also be structural. And therefore, the context of the patent is important. And Judge Davis looked at the prosecution history, and he determined that it was used most often to discuss function. And therefore, in the absence of any other evidence, he construed it as a means plus function limitation, just like this court approved in overhead norm, which was a semiconductor device like this one. There was a second memory switch means. There was no other structure provided in the claim limitation. The trial court there said without other structure, switch is simply too broad. So you're saying a black box with the word switch in it. Even if one, say there was a black box in a circuit diagram that had the word switch in it, which of course there are several such things here in these pictures, that is not enough to convey sufficient structure for one of skill in the art to say, well, I know I could use any one of these commercially available switches. No. How does that comport with our Budd versus Harley-Davidson case, where there was a diagram with a circle that said vacuum sensor? Well, the circle that said vacuum sensor is not conveying with specificity what type of vacuum sensor to use. Nonetheless, there were many different commercially available options, and this court held that was sufficient structure. I think that in Buddy, though, there was no question that that structure was linked to a particular function. I mean, the party stipulated that if it's here, it's here. And there was actually discussion of that vacuum in the specification itself. This is very different. Here, there's no mention of tri-state circuitry in the specification whatsoever, and there's no linking of it anywhere to either the switch means or the means for causing it. But in the diagrams, the word switch appears in a box on several different places. So why wouldn't one skilled in the art understand that to be the relevant structure? The word switch appears in lots of different boxes for lots of different purposes, and what the experts below said, including Dr. Patterson, is that switch can mean a whole variety of things. But that's to the general question. I think that Judge Moore is focusing in on this computer architecture. Doesn't it require a controllable switch like a tri-state switch? Not the general question, what does switch mean? Can you think of thousands of switches? But looking at this particular diagram with this particular architecture, wouldn't one of skill in the art say that's got to be a controllable switch like a tri-state? No, Your Honor. I mean, there's nothing in the record that suggests that. What the record suggests is that looking even at this specification and the terms it uses, plurality of logical elements, that could signify a very large number of different structures, no single one of which is linked to that particular function. Counsel, you said there's nothing in the record, but that's not exactly right, right? Because they had expert declarations which suggested that this did disclose and that one of skill in the art would know that the tri-state switch is the appropriate one to use based on this disclosure. And if that's the case, doesn't that create an issue of fact? Your Honor, that's a misrepresentation of what's in the record, and I'd urge the Court to look at the declaration and the supplemental declaration of Dr. Patterson as well as his depo excerpts. What he says is that looking at this, one could discern that an example of such a switch would be, or one can use such a switch. With respect to the means for causing, he doesn't even go that far. All he says there is, I think from the function, I could discern that a tri-state would be one way of doing it. You can use it. You could use it. It's an example. That's not what cases like Biomedino default prove and now don't require. Those cases require. Give me some examples of other kinds of switches that would fit into this computer architecture and satisfy the functions. I think that there are probably many different kinds of arrangements of logical elements that could perform it. A multiplexer, Your Honor, is a different structure altogether. That's one. What else? And that's one that Patterson identified that could perform it. There are multiplexers. There are AND gates and OR gates. There are combinations of more complicated gate arrangements. There are an almost unlimited number of different structures that could perform it. And here again, we're focusing on tri-state circuits. There's no mention of tri-state circuits anywhere in the specification and no mention of control elements for tri-state. But that gets you back to Judge Moore's question. Is it so obvious to one skilled in the art that in this particular area, for this particular function, that only a tri-state switch could be used? It is not, Your Honor, and that's not what the record reflected. That is not what Dr. Patterson testified to. And he was asked how many different ways could this be done. He said a multiplexer would be one alternative. And I don't know. There are many combinations. It's a big number. We asked the inventor the same question. He said as many different ways as there are design teams. And I think a key point is that here the inventor's testimony was to the effect that the specification wasn't even intended to designate a particular structure. They wanted it to be as open-ended as possible. As many ways as there are design teams to build it. Now that's inconsistent with the promise that a patentee makes under 112.6. If you're going to claim means plus function in the case of either switch means or means for causing, you are obligated to at least set forth somewhere in the specification some structure to which your claim is going to be limited. Now in Biomedino... Counsel, can I just ask you real quick so that we can put this issue aside? Path configuring means, are you on appeal suggesting that you think the district court correctly characterized that as a 112.6 claim limitation? Yes, we are, Your Honor. What about all the structure? Further comprises a dedicated memory address circuit. You agree that's structure, don't you? That's structure over and above the path configuring means. That was the problem with that, Your Honor, is that if the court were to reach that, Judge Davis correctly construed that. Those other claim limitations pertain to further comprising additional features. He found nothing in claim limitation 2, path configuring means, that denotes structure and nothing in the claim itself that would support structure. That's why he determined it was a means plus function claim, which, by the way, is the same result that Judge Ilston reached in a previous case involving Sam Sung that was filed in the Northern District of California. She reached the identical conclusion based on the same reasons after a careful review of the record, the specification, as well as the prosecution history. So our key points in closing are that the patentees failed to meet the promise of 112.6. Yes, you can claim through means plus function. The means for causing is admittedly a means plus function claim. There is absolutely no disclosure in the specification whatsoever of a structure for means for causing, and for that reason and that reason alone, there's no basis to reverse the judgment of the district court. If there are no further questions, I will end my time. Thank you, Mr. Van Ness. Mr. Schwartz, you have two and a half minutes, a little more. Thank you, Your Honor. A few comments. I certainly encourage the court to take a careful look at Dr. Patterson's declaration. He does not use language of could. He uses language of would. That one of ordinary skill in the art would make these conclusions. It's not equivocal in terms of could. It is would. To the extent that the inventor himself is one of ordinary skill in the art, and whether what he says is important to me is an issue of credibility. It has to go with the way. There's no question of fact. It's certainly a reasonable jury might have the opportunity to assess what's the impact of that commentary. To the extent that Mr. Van Ness makes an eloquent argument, that in and of itself is not evidence. The fact remains is that there is no evidence that Intel has come forth with. The only evidence, if you want to call it that, is that it is relied upon statements made in the expert report of Dr. Mercer. Is there a potential for a factual issue on a claim construction question like this? There is that potential. As to what one of ordinary skill in the art would actually know at the time he sat down to read the specification. Yes, but we're dealing with claim construction. I understand this is a difficult area for the court. I encourage the court to look at the Cornell University case that was cited in the brief, which talks about the area of one of ordinary skill in the art and how high that level is. That case is interesting in the context that it happens to fall into. Could a switch means be a multiplexer or an and-or circuit? Can it? Yes. Without the parameters of the specification, it could, but that's not what we're dealing with. We're dealing with some defined functions that have to be accomplished, and in that context, those defined functions limited the universe to only a tri-state switch. Also, to the extent that there's silence in the record about tri-state, I would encourage the court to look at the 6520 virtual interface adapter that's identified in the specification. Of course, there's nothing that links that to the function in the claim, is there? Nothing specifically other than Dr. Patterson. It's in the record, which shows that that's a piece of prior art, but there's nothing that shows that that prior art was what you meant to be the one that would satisfy this function. That would show a tri-state switch is used at the interface in order to connect the path configuring means to the various buses that are involved. Thank you, Your Honor. Thank you, Mr. Schwartz. Our last case this morning is Dills v. Department of Veterans Administration.